JAMES A. CURTIS AND GEORGE H. OUTHOUSE v. LUTHER T. WILCOX.

[See 49 Mich. 425.]

*Chattel mortgage—Trover—Fraudulent representations—Estoppel—Evidence.*

1. False representations made by a creditor holding an unrecorded chattel mortgage as to the financial standing of his debtor, in answer to a letter of inquiry from a merchant from whom the debtor is seeking to purchase goods on credit, to induce the extending of such credit, will estop the creditor from interposing a mortgage subsequently executed to him to prevent the collection of the debt contracted in reliance upon such representations; and the same rule applies to the concealment by

the creditor of the debt, and of the place of residence of the debtor (his place of business not being his real place of residence), if made for the purpose of inducing such credit.

2. In such a case the inquirer should be permitted to state where he understood the debtor's residence to be from the letter written by the creditor in answer to his letter of inquiry.

3. The testimony of a mortgagee that he left a copy of his mortgage with the township clerk for record, and paid him his fees, as he thinks, upon a certain day, cannot be considered by the jury as evidence of the filing of the mortgage, in the absence of the copy with the filing upon it, or of some showing why it cannot be produced.

Error to St. Joseph. (Loveridge, J.) Argued March 3, 1892. Decided April 8, 1892.

Trover. Defendant brings error. Reversed. The facts are stated in the opinion.

*Howell, Carr & Barnard,* for appellant.

*O. F. Bean,* for plaintiffs.

MORSE, C. J. This is a suit in trover commenced in 1879 to recover for the alleged conversion of certain goods, levied upon and seized by the defendant as sheriff of St. Joseph county, at the suit of creditors of one Gilbert Dickerson. The case has been once before in this Court *(Curtis v. Wilcox,* 49 Mich. 425), and has been tried several times in the circuit. At the last trial the verdict of the jury was in favor of plaintiffs for $3,844.66, but, by an order of the court and with the consent of plaintiffs, the sum of $1,370.35 was remitted from the same, and judgment entered for $2,474.31.

Much of the argument and brief of defendant's counsel is directed against the refusal of the court below to give the defendant's fifth request, as follows:

"The jury, in determining this case, will take into consideration, as bearing upon the question of fraud, the manner in which the business was started at Three

Rivers, and carried on from that time up to the time the mortgage was executed, who funished the means and stock to start with, and who looked after the business and was interested in it afterwards; and if .they find from the evidence that the plaintiffs were the owners of or interested in said business, and assisted in carrying it on, or that they were partners in said business, and it was carried on for them or in their interest by said Dickerson, then said mortgage would be fraudulent and void, and your verdict will be for defendant."

The evidence showed that Dickerson's family, resided on a farm in the township of Plainfield, Kent county, Mich. In March, 1877, Dickerson, in company with one Emma C. Frain, commenced business at Three Rivers in this State, under the firm name of G. Dickerson & Co., with a small stock of tinware and peddlers' supplies. The plaintiffs were in business at Grand Rapids, Mich., under the firm name of J. A. Curtis & Co. They furnished Mrs. Frain with her share of the capital stock in the business at Three Rivers, she giving them security therefor by mortgage upon land. They also furnished some goods on credit to Dickerson to put in the firm, and Dickerson had some horses and wagons of his own. These horses and wagons were used in peddling goods throughout the country for the firm of G. Dickerson & Co. Mrs. Frain subsequently sold out to Dickerson, who thereafter conducted the business in his own name. He dealt largely with J. A. Curtis & Co., and was also indebted to them more or less. At one time, in 1878, plaintiffs took a $1,200 mortgage upon his stock from Dickerson, which mortgage was never put upon record or made public in any way. On the 18th of September, 1878, Dickerson executed a mortgage to plaintiffs, dated September 14, for $2,861.27, a copy of which was filed with the township clerk of Plainfield, September 23, 1878. October 11, 1878, plaintiffs took possession of the stock of goods at Three Rivers, under this mortgage, and also

other property found at Grand Rapids and other places. Only the goods in the store at Three Rivers are now involved in this suit. The defendant levied upon this stock while in the possession of plaintiffs, and plaintiffs brought trover.

The theory of defendant, upon which this fifth request was based, was that the plaintiffs were interested in the business at Three Rivers; that Dickerson in fact was but the tool and agent of plaintiffs; and that the mortgage was of no more force and effect against the creditors of the business than would have been a mortgage from Dickerson to Dickerson or from plaintiffs to plaintiffs upon the same property. To support this theory the defendant relied upon various facts and circumstances in the conduct of the business which it is claimed tended to show that the business was in fact that of the plaintiffs, and not of Dickerson, or that plaintiffs were interested in the business as partners. We think there was testimony upon which defendant was entitled to go to the jury on this theory, and that this fifth request should have been given in substance, as we do not find that the court in his instructions to the jury gave the defendant the benefit of this contention.

The mortgage provided that Dickerson might have the privilege of selling the goods "in the ordinary and usual way heretofore pursued" by him, but not in an unusual manner or quantity. On the day the mortgage was given plaintiffs wrote a letter addressed to George S. Curtis, of Plainfield, giving him notice of this mortgage, and of this provision in it, and saying:

"But by this writing I grant him the privilege of selling to you in such quantities as you may choose to buy, and release all claims on all goods purchased by you."

George S. Curtis is a brother of James A. Curtis, one of the plaintiffs. This letter was delivered by James A.

Curtis to Dickerson. It is contended by defendant that this letter was a part of the mortgage, and should have been filed with it. George S. Curtis received about $5,000 worth of goods from Dickerson. Plaintiffs claim that George S. Curtis did not receive any goods under this letter, and James A. Curtis testifies that the letter related only to a balance of $300 going to George S. Curtis from Dickerson, and that it was not meant to authorize a sale of any more than that amount. It is argued that this letter wrought a material change in the contract set out in the mortgage, and the copy filed gave false information. But it is not shown by the record that the existence of this letter was of any detriment to the creditors who are attacking the mortgage in this suit. It was held, when the case was here before, that the mortgage did not cover any of the goods that were purchased by Dickerson, and, after their arrival at Three Rivers, shipped from the station there to Grand Rapids or other points without ever being brought into the store or business at Three Rivers. The record certainly shows that a portion of the goods received of Dickerson by George S. Curtis were shipped in the bulk from the station at Three Rivers as they came from the wholesale dealers; and it does not show that any of them were ever in the store or business at Three Rivers, and therefore covered by plaintiffs' mortgage. What amount of goods, if any, were shipped to George S. Curtis after the mortgage was given does not appear; but some of them were sent him before the mortgage was executed, as shown by testimony introduced by the defendant. The defendant was not entitled, as contended by him, to have the value of the goods sent to George S. Curtis deducted from the amount of plaintiffs' mortgage. Indeed, the record shows that the sheriff obtained a large amount of these goods under his attachment levies, and the plaint-

iffs were not permitted in this suit to dispute his right to them.

It is further contended that the mortgage was void, as against the creditors represented by defendant in this suit, because of the existence of this letter, releasing from the mortgage what property George S. Curtis might purchase, and the fact that the letter was not filed with the mortgage. But it was not shown, as before stated, that any of the goods covered by this mortgage were ever sold to or came into the possession of George S. Curtis; and, if not, then the mortgage was never operated upon by this letter, and such letter would have had no effect as a part of it. There is certainly no showing in the record that the existence of this letter had any bearing upon the mortgaged property to the prejudice of the attaching creditors, nor that they were in any manner misled because of its not being filed with the mortgage or as a part of it.

It was shown upon the trial that before Johnson & Wheeler, who were attaching creditors, sold any goods to Dickerson, they wrote to plaintiffs inquiring as to the "standing, habits, and means of G. Dickerson, of *Three Rivers.*" This letter of inquiry was dated July 9, 1878, and upon reference by Dickerson to plaintiffs. Plaintiffs replied July 10, 1878, as follows:

"*Gentlemen*: Yours of the 9th inst., making inquiry as to the habits and means of G. Dickerson, of Three Rivers, is rec'd. In answer, would say I consider Mr. Dickerson an enterprising man and a square dealer. He used to reside here, and conduct a good livery business. He has been engaged in the peddling business since the spring of 1877, at Three Rivers. He is considered a man of some means. E. P. & S. L. Fuller, bankers of this city, with whom Mr. Dickerson has done business, says 'he is reliable and prompt.'"

Delos Phillips, of Kalamazoo, another of the attach-

ing creditors, wrote to James A. Curtis, September 13, 1878, asking for the "financial standing of G. Dickerson, of *Three Rivers*, in the tin business, to the amount of $350, payable in 60 or 90 days, and in your opinion would his paper be met promptly?" Mr. Phillips testified that Curtis replied that he considered Dickerson perfectly responsible; that he had just shipped him a car-load of rags worth $449, and that he would ship him 10 car-loads, if he wished them, that he regarded him as a man entitled to credit, and perfectly responsible, to the amount of $5,000. Phillips further testified that he-acted upon this recommend, and gave Dickerson credit for $375.

At the time Curtis must have answered this inquiry he had drawn the mortgage to plaintiffs, which was written on the 14th of September, 1878, but not executed until the 18th, and Dickerson was owing plaintiffs, as Curtis. testifies, $3,700. When plaintiffs answered Johnson & Wheeler's inquiry, Dickerson was also owing them over $2,400, and they knew that his residence was at Plainfield, and not at Three Rivers, and they held an unrecorded mortgage of $1,200 upon the goods at Three Rivers. Wheeler testified that, if his firm had known of this indebtedness to plaintiffs, they would not have sold Dickerson goods on credit, and that they relied on plaintiffs' letter in giving such credit.

The court was requested to charge the jury in this. regard as follows:

"If the jury find that the plaintiffs were applied to by any of the creditors represented here for the information concerning the character or responsibility of Dickerson, and, knowing or having good reason to believe that such creditors believed Dickerson resided in Three Rivers, and that they contemplated selling him goods, wrote such creditors, without disclosing to them his.

actual residence or the existence of their mortgage, if they then had been furnished one, and if, in reliance on such information by plaintiffs, the creditors sold Dickerson goods, then, as to such creditors, the plaintiffs are estopped from urging their mortgage.

"If the jury find that the plaintiffs induced Johnson & Wheeler to believe that Dickerson resided at Three Rivers, and if under that belief they trusted Dickerson in ignorance of the mortgage, then plaintiffs are estopped from setting up a mortgage not filed at Three Rivers, and the mortgage filed at Three Rivers is not notice until filed."

The court was further requested to instruct the jury to the effect that the plaintiffs were estopped from contesting the claims of Johnson & Wheeler and Delos Phillips.

These requests were none of them, as worded, entirely proper, as they left out the element of bad faith in plaintiffs; but they raised the question of estoppel, and brought to the attention of the court the fact, which is evident, that this was an important issue in the case. The jury should have been instructed that if plaintiffs concealed the indebtedness of Dickerson to them, and his place of residence, for the purpose of inducing Johnson & Wheeler and Phillips to trust him, they were estopped from enforcing their mortgage as against them. If Phillips' testimony was believed by the jury, there was a clear estoppel, as a matter of law, in his case. James A. Curtis testifies that he wrote the letter to Phillips on the 14th of September. At that time he well knew, as shown by his testimony, that Dickerson was insolvent, and plaintiffs were then preparing to take possession of all his assets under a mortgage drawn up on that day. The court, in reference to these letters, instructed the jury, in substance, that if the representations therein contained were intentionally and falsely made, for the purpose of aiding Dickerson in establishing a fictitious

credit, they could give such weight to the letters as they deemed they merited, bearing upon the question whether it was a good or false mortgage. This did not go far enough. If these representations were falsely made to induce the giving of credit to Dickerson, this mortgage could not be interposed to prevent the collection of the debts owing to Johnson & Wheeler and Phillips, and contracted in reliance upon such false representations. The same rule would hold good as to the concealments. If the concealment of the debt to plaintiffs and of Dickerson's place of residence was purposely made to induce credit, then such credit, given in reliance upon the letters, is entitled to preference, as against plaintiffs' mortgage.

Mr. Wheeler should have been permitted to state as to where he understood Dickerson's residence to be from the letter of plaintiffs in answer to the inquiry of his firm. The evidence shows that Johnson & Wheeler sold goods to Dickerson on the 23d and 28th days of September, 1878. At that time a copy of the mortgage was on file at Plainfield, but not at Three Rivers, where Johnson & Wheeler would be likely to search for mortgages if they understood that Dickerson lived at Three Rivers.

The court also erred in instructing the jury that they might consider the fact that a copy of the mortgage was filed at Three Rivers as an evidence of good faith on the part of plaintiffs, as there was no competent evidence to show when it was filed there. James A. Curtis testified that he left a copy of the mortgage with the township clerk of Lockport (in which township the village of Three Rivers is situated), and paid him his fees, *he thinks*, on the 2d of October, 1878. This was not the best evidence of the filing, and could not be considered until the copy was produced with the filing upon it, or some showing made why it could not be produced.

We find no other errors in the proceedings.

The judgment is reversed, and a new trial granted, with costs of this Court to defendant.

The other Justices concurred.